CROWELL CONSTRUCTORS, INC., Petitioner v. STATE OF NORTH CAROLINA, ex rel., WILLIAM W. COBEY, JR., SECRETARY, NORTH CAROLINA DEPARTMENT OF ENVIRONMENT, HEALTH AND NATURAL RESOURCES, Respondent

No. 178PA94

(Filed 8 March 1996)

1. Costs § 37 (NCI4th)— attorney fees—action by State for mining violations—test for substantial justification

For purposes of N.C.G.S. § 6-19.1, which permits the prevailing party (other than the State) to recover attorney fees in a civil action brought by the State if the agency acted without "substantial justification," substantial justification should be construed as justified in substance or in the main, that is, justified to a degree that could satisfy a reasonable person. This standard should not be so strictly interpreted as to require the agency to demonstrate the infallibility of each suit it initiates, but should not be so loosely interpreted as to require the agency to demonstrate only that the suit is not frivolous. An outcome determinative test based upon which party prevailed at trial was erroneously applied in this case; when deciding whether a State agency has pressed a claim without substantial justification, the law and facts known to, or reasonably believed by, the State agency at the time the claim is pressed must be evaluated.

Am Jur 2d, Costs § 64.

2. Costs § 37 (NCI4th)— attorney fees—action by State for mining violations—substantially justified

Crowell Constructors was not entitled to recover attorney fees under N.C.G.S. § 6-19.1 where Crowell purchased land which had previously been operated as a sand and gravel pit; poor quality sand had been stockpiled on the property 20 years previously above the original surface soil; the stockpiled sand lay fallow and varying densities of natural vegetation began to grow on top of the sand; Crowell began to remove the stockpiled sand after it

CROWELL CONSTRUCTORS, INC. v. STATE ex rel. COBEY

[342 N.C. 838 (1996)]

purchased the property; the State pursued penalties for mining without a permit; the superior court found that there was no evidence to support a finding that Crowell's activities constituted a violation of the Mining Act; and Crowell petitioned for attorney fees on the grounds that the State was without substantial justification in pressing its claim. Under the Mining Act, N.C.G.S. § 74-49(7)(a), mining means the breaking of the surface soil in order to facilitate or accomplish the extraction of minerals, with sand being defined as a mineral. DEHNR was justified to a degree that could satisfy a reasonable person in asserting its position or opinion that the top portion of the sand over a period of twenty-four years had become the surface soil when a black band of second soil growth existed upon which scrub pines and other types of vegetation grew.

**Am Jur 2d, Costs § 64.**

On respondent's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 114 N.C. App. 75, 440 S.E.2d 848 (1994), modifying and affirming judgment awarding attorney's fees for petitioner entered by Brewer, J., in Superior Court, Cumberland County, 12 August 1992. Heard in the Supreme Court 16 March 1995.

*McCoy, Weaver, Wiggins, Cleveland & Raper, by Richard M. Wiggins and Anne Mayo Evans, for petitioner-appellee.*

*Michael F. Easley, Attorney General, by Daniel F. McLawhorn and Kathryn Jones Cooper, Special Deputy Attorneys General, and David W. Berry, Associate Attorney General, for respondent-appellant.*

LAKE, Justice.

This case comes before this Court for the second time and currently presents an issue of first impression involving an award of attorney's fees pursuant to N.C.G.S. § 6-19.1.

In 1979, Crowell Constructors, Inc. ("Crowell") purchased a thirty-six-acre tract of land in Moore County. This land had previously been operated as a sand and gravel pit by Cumberland Sand & Gravel Company. Gravel and sand were brought to the property and separated by a washing and screening process. As a by-product of this process, poor-quality sand was produced and stockpiled on the prop-

erty. When Cumberland Sand & Gravel ceased its operations in 1960, it left behind some 150 tons of this poor-quality sand in stockpiles as high as twenty-five feet; some of these stockpiles were conical in shape, and some were ridge-like. All of the sand was stockpiled above the original surface soil.

From 1960 until the early 1980s, the stockpiled sand lay fallow. During these intervening years, varying densities of natural vegetation, including scrub pine trees, began to grow on top of the sand. After Crowell purchased the property, it began to remove the stockpiled sand from the site with the aid of front-end loaders and trucks. On 8 February 1984, the North Carolina Department of Natural Resources and Community Development, the predecessor of the Department of Environment, Health and Natural Resources ("DEHNR"), *see* N.C.G.S. §§ 143B-279.1 to -279.5 (1993), sent Crowell a notice of violation informing the company that by removing the sand, it was mining without a permit in violation of The Mining Act of 1971. *See* N.C.G.S. §§ 74-46 to -68 (1985) (amended 1994); *see also* N.C.G.S. §§ 143B-290 to -293 (1993). After communications with Crowell's legal counsel, DEHNR determined that, due to the short-term nature of the removal, Crowell would not be required to apply for a mining permit, although it was DEHNR's opinion that Crowell's activities technically met the definition of "mining." DEHNR determined that Crowell's activities would be better regulated by the Sedimentation Pollution Control Act of 1973. Accordingly, Crowell submitted a soil erosion and sediment control plan, which DEHNR later approved.

Nearly two years later, DEHNR inspected the site again and observed that Crowell was still removing the stockpiled sand and that Crowell had not properly implemented its soil erosion and sediment control plan. On 14 February 1986, DEHNR sent Crowell a second notice of violation informing Crowell that it was subject to a civil penalty of up to $5,000 for each day of illegal mining. After conferring with DEHNR concerning the violations, Crowell agreed to immediately cease removing the stockpiled sand and to apply for a mining permit. On 19 February 1986 and 14 March 1986, DEHNR inspected the site again and found Crowell still removing the sand. In response, DEHNR assessed a $10,000 civil penalty against Crowell for mining on two occasions without a permit in violation of The Mining Act.

Crowell contested the penalty assessment and petitioned for agency hearing before an Administrative Law Judge ("ALJ"). The

CROWELL CONSTRUCTORS, INC. v. STATE ex rel. COBEY

[342 N.C. 838 (1996)]

ALJ's recommended decision concluded that while Crowell had violated The Mining Act, the civil penalty was arbitrary and capricious as the penalty amount was based upon unpublished guidelines, and the penalty was reduced to $2,000. The North Carolina Mining Commission next heard the matter and, on 16 September 1988, issued its final agency decision which modified the ALJ's recommended decision by reinstating the original $10,000 penalty assessment. Crowell filed a petition for judicial review of the agency decision in Superior Court, Cumberland County. On 15 August 1989, the superior court reversed the Mining Commission on the ground there was no competent, material or substantial evidence in the record to support a finding that Crowell's activities constituted mining in violation of The Mining Act.

DEHNR appealed to the Court of Appeals which, in a divided opinion, reversed the superior court and, in reinstating the $10,000 penalty, held that the record demonstrated substantial evidence to support a finding that Crowell's activities constituted mining within the meaning of The Mining Act and that the Commission's decision was neither arbitrary nor capricious. *Crowell Constructors v. State ex rel. Cobey*, 99 N.C. App. 431, 393 S.E.2d 312 (1990) (hereinafter *Crowell I*). Crowell appealed to this Court based on the dissent filed, and, because DEHNR had failed to include a written notice of appeal in the record pursuant to Rule 3(a) and Rule 9(a)(1)(i) of the North Carolina Rules of Appellate Procedure, this Court held the Court of Appeals lacked jurisdiction over the appeal and thus vacated the decision in *Crowell I* and remanded for dismissal of the appeal. *Crowell Constructors v. State ex rel. Cobey*, 328 N.C. 563, 402 S.E.2d 407 (1991) (per curiam).

Thereafter, Crowell filed a petition for attorney's fees pursuant to N.C.G.S. § 6-19.1 in Superior Court, Cumberland County, on the basis that DEHNR acted "without substantial justification" in pressing its claim against Crowell. On 12 August 1992, the superior court entered judgment granting Crowell's petition for reimbursement of attorney's fees in the amount of $16,529.20. DEHNR appealed the award to the Court of Appeals and relied upon the *Crowell I* opinion, which held that substantial evidence showed Crowell's activities constituted mining, as a basis for the position that DEHNR was not "without substantial justification" in assessing the civil penalty against Crowell. However, the Court of Appeals noted that since this Court had vacated *Crowell I*, the opinion was a nullity and void. Thus, the Court of Appeals held that the agency, in relying upon a nullity, failed to

carry its burden of showing "substantial justification." The Court of Appeals further held that the trial court had concluded that there was no competent or substantial evidence that Crowell violated The Mining Act, and since DEHNR had failed to properly preserve an appeal from that conclusion, this was the law of the case and binding on appeal. *Crowell Constructors v. State ex rel. Cobey*, 114 N.C. App. 75, 440 S.E.2d 848 (1994) (hereinafter *Crowell II*). The Court of Appeals then modified the amount of attorney's fees allowed to $14,619.20 and affirmed the superior court. *Id.* at 80-81, 440 S.E.2d at 851.

This Court granted DEHNR's petition for writ of supersedeas and discretionary review on 5 May 1994. On 16 June 1994, this Court also allowed DEHNR's motion to amend the record on appeal of *Crowell II* to include the record on appeal of *Crowell I*. We therefore note at the outset of our review that when the Court of Appeals reached its latest decision in this matter, it only had before it the record on appeal of *Crowell II*, which essentially contains the procedural history of this case. The underlying facts of this dispute are contained in the record on appeal of *Crowell I*. Thus, in reaching our decision on this appeal, this Court has been able to rely upon facts that were unavailable to the panel of the Court of Appeals which last considered this matter.

**[1]** The essential issue presented here for resolution is whether DEHNR was "without substantial justification" under N.C.G.S. § 6-19.1 in pressing its claim that Crowell was engaged in mining without a permit in violation of The Mining Act. We conclude that, based upon the records of *Crowell I* and *Crowell II*, we cannot say that DEHNR was "without substantial justification" in its determination that Crowell was illegally mining. Crowell is, therefore, not entitled to reimbursement of its reasonable attorney's fees pursuant to N.C.G.S. § 6-19.1. Accordingly, we reverse the Court of Appeals.

This Court has not previously considered the meaning of "substantial justification" pursuant to N.C.G.S. § 6-19.1. This statute provides in pertinent part:

In any civil action . . . brought by the State or brought by a party who is contesting State action pursuant to G.S. 150A-43 . . . unless the prevailing party is the State, the court may, in its discretion, allow the *prevailing party* to recover reasonable attorney's fees . . . if:

CROWELL CONSTRUCTORS, INC. v. STATE EX REL. COBEY

[342 N.C. 838 (1996)]

(1) The court finds that the agency acted *without substantial justification* in pressing its claim against the party; and

(2) The court finds that there are no *special circumtances* that would make the award of attorney's fees unjust.

N.C.G.S. § 6-19.1 (1986) (emphasis added). Thus, in order for the trial court to exercise its discretion and award reasonable attorney's fees to a party contesting State action in one of the prescribed ways, the prevailing party must not be the State, the trial court must find the State agency acted "without substantial justification" in pressing its claim and the trial court must find no special circumstances exist which make an award of attorney's fees unjust. In resolving issues concerning statutory construction, this Court's first task is to ascertain legislative intent in order to assure that both the purpose and the intent of the legislature are carried out. *Electric Supply Co. of Durham v. Swain Elec. Co.*, 328 N.C. 651, 403 S.E.2d 291 (1991). The words "substantial justification" are undefined within the statute. Therefore, absent any ambiguity in the language employed in the statute, these words must be accorded their plain and definite meanings. *State ex rel. Util. Comm'n v. Edmisten*, 291 N.C. 451, 232 S.E.2d 184 (1977).

The Court of Appeals, in construing "substantial justification," has followed the United States Supreme Court's construction of similar language under the Equal Access to Justice Act ("EAJA") in *Pierce v. Underwood*, 487 U.S. 552, 101 L. Ed. 2d 490 (1988). *See Crowell II*, 114 N.C. App. at 79-80, 440 S.E.2d at 851. We concur with the Court of Appeals in this regard.

The EAJA contains an attorney's fees provision almost identical to our statute, N.C.G.S. § 6-19.1, and provides in relevant part:

Except as otherwise specifically provided by statute, a court shall award to a *prevailing party* other than the United States fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States . . . unless the court finds that the position of the United States was *substantially justified* or that *special circumstances* make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1994) (emphasis added). In *Pierce*, the United States Supreme Court noted that the word "substantial" was subject to two different connotations:

CROWELL CONSTRUCTORS, INC. v. STATE ex rel. COBEY

[342 N.C. 838 (1996)]

On the one hand, it can mean "[c]onsiderable in amount, value, or the like; large,"—as, for example, in the statement "he won the election by a substantial majority." On the other hand, it can mean "[t]hat is such in substance or in the main,"—as, for example, in the statement "what he said was substantially true."

*Pierce*, 487 U.S. at 564, 101 L. Ed. 2d at 504 (citations omitted). Of these two connotations, the Court held that the connotation most naturally conveyed by the EAJA was " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Id.* at 565, 101 L. Ed. 2d at 504.

We agree and conclude that for purposes of N.C.G.S. § 6-19.1, "substantial justification" should be construed as " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Pierce*, 487 U.S. at 565, 101 L. Ed. 2d at 504. Our legislature, in enacting N.C.G.S. § 6-19.1 in order that a prevailing party may recover its reasonable attorney's fees when a State agency has pressed a claim against that party "without substantial justification," obviously sought to curb unwarranted, ill-supported suits initiated by State agencies. In order to further the legislature's purpose of reining in wanton, unfounded litigation, the State's action, for purposes of N.C.G.S. § 6-19.1, is measured by the phrase "substantial justification." This standard should not be so strictly interpreted as to require the agency to demonstrate the infallibility of each suit it initiates. Similarly, this standard should not be so loosely interpreted as to require the agency to demonstrate only that the suit is not frivolous, for "that is assuredly not the standard for Government litigation of which a reasonable person would approve." *Pierce*, 487 U.S. at 566, 101 L. Ed. 2d at 505. Rather, we adopt a middle-ground objective standard to require the agency to demonstrate that its position, at and from the time of its initial action, was rational and legitimate to such degree that a reasonable person *could* find it satisfactory or justifiable in light of the circumstances then known to the agency.

DEHNR argues that the Court of Appeals, rather than viewing the circumstances and information known by DEHNR at the time it assessed the civil penalty against Crowell to decide whether DEHNR was "without substantial justification," applied instead what amounted to an outcome determinative test based upon which party prevailed in the trial court below. According to DEHNR, this shift in focus disregards prior precedent set by the Court of Appeals in

CROWELL CONSTRUCTORS, INC. v. STATE ex rel. COBEY

[342 N.C. 838 (1996)]

*S.E.T.A. UNC-CH v. Huffines,* 107 N.C. App. 440, 420 S.E.2d 674 (1992). While we agree with DEHNR that an outcome determinative test was, in essence, applied in this case, in fairness to the Court of Appeals, we recognize that this shift from the Court of Appeals' prior precedent and previous holding in *Crowell I* primarily resulted from the peculiar procedural history of this case, as contained in the limited record on appeal before the Court of Appeals. In light of the expanded record and additional facts available to this Court, we necessarily reach a different result.

*S.E.T.A.* involved an award of attorney's fees pursuant to N.C.G.S. § 6-19.2 which has the same criteria for awarding attorney's fees as N.C.G.S. § 6-19.1, but applies instead to a State agency's refusal to permit public access to public records. The Court of Appeals stated:

> The test for substantial justification is not whether this [c]ourt ultimately upheld respondent's reasons for resisting public disclosure of the requested documents as correct but, rather, whether respondent's reluctance to disclose was " 'justified to a degree that could satisfy a reasonable person' " under the existing law and facts known to, or reasonably believed by, respondent at the time respondent refused to make disclosure.

*S.E.T.A.,* 107 N.C. App. at 443-44, 420 S.E.2d at 676 (citations omitted). Thus, pursuant to *S.E.T.A.,* in deciding whether a State agency has pressed a claim against a party "without substantial justification," the law and facts known to, or reasonably believed by, the State agency at the time the claim is pressed must be evaluated.

When the test or focus of whether an agency's position or action is "without substantial justification" is directed to the end result in the trial court, the standard becomes more a question of which party prevailed at that point and less a question of whether the agency's position, at the inception of the controversy, was justified to a degree that could satisfy a reasonable person. Indeed, the Supreme Court in *Pierce* rejected such an outcome determinative test under the EAJA in stating:

> Obviously, the fact that one other court agreed or disagreed with the Government does not establish whether its position was substantially justified. Conceivably, the Government could take a position that is not substantially justified, yet win; even more

likely, it could take a position that is substantially justified, yet lose.

*Pierce*, 487 U.S. at 569, 101 L. Ed. 2d at 507.

[2] In the instant case, the crux of DEHNR's claim against Crowell, and hence the threshold measure of its justification, hinged upon whether Crowell's activities met, or could reasonably be considered to have met, one of the three definitions of "mining" contained within The Mining Act. Under the first of these definitions, "mining" means "[t]he breaking of the surface soil in order to facilitate or accomplish the extraction or removal of minerals, ores, or other solid matter." N.C.G.S. § 74-49(7)(a). Under N.C.G.S. § 74-49(6), "sand" is defined as a "mineral." Thus, in order to determine whether DEHNR was or was not "without substantial justification" for assessing the $10,000 civil penalty against Crowell for illegal mining, consideration must be given to whether the agency, at the time the claim was pressed, had a basis, satisfactory to a reasonable person, to conclude that Crowell had broken through the "surface soil" in order to remove the sand.

Based upon our review and analysis of the records before us in *Crowell I* and *Crowell II*, we conclude under the above standard that DEHNR, at the time it assessed the civil penalty against Crowell, was not "without substantial justification" in asserting that Crowell, by removing sand that had been stockpiled for some twenty-four years, was technically engaged in mining without a permit in violation of The Mining Act. The records reveal that the stockpiles of sand were as high as twenty-five feet in 1960 when Cumberland Sand & Gravel ceased operations. Twenty-four years later in 1984, the sand was covered to varying degrees with vegetation, including pine trees. Photographs indicate a brown or dark band of material, indicative of a second growth of soil, at the top of the sand, upon which scrub pines and other vegetation grew. In order to remove the sand, Crowell cleared the vegetation on the newer "surface soil" from the top of the sand and cut into and extracted the sand with a front-end loader. Under these circumstances, we conclude DEHNR was justified to a degree that could satisfy a reasonable person in asserting its position or opinion that the top portion of the sand over a period of twenty-four years had become the "surface soil," when a black band of second soil growth existed, upon which scrub pines and other types of vegetation grew. Because we hold that DEHNR was not "without substantial justification" in its initial position, Crowell is not entitled to recover attorney's fees under N.C.G.S. § 6-19.1.

Accordingly, we reverse the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Cumberland County, for proceedings consistent with this opinion.

REVERSED AND REMANDED.