DAILY EXPRESS, INC., Petitioner v. BRYAN E. BEATTY, SECRETARY OF CRIME CONTROL & PUBLIC SAFETY, Respondent

No. COA08-1509

(Filed 16 February 2010)

**1. Administrative Law— overweight vehicle—fine improperly assessed—summary judgment**

For the reasons stated in *Daily Express, Inc. v. N.C. Dep't of Crime Control & Pub. Safety*, the court did not err by granting petitioner's motion for summary judgment and requiring respondent agency to repay a penalty it had imposed upon petitioner for operating an overweight vehicle, plus interest, pursuant to N.C.G.S. §§ 20-188(e) and 119(d).

**2. Costs— attorney fees—improperly granted—substantial justification**

The trial court erred by awarding attorney fees to petitioner pursuant to N.C.G.S. § 6-19.1. Although the trial court had jurisdiction to award petitioner attorney fees despite the lack of a "final disposition" or a formal petition for attorney fees because the superior court was reviewing the action of the administrative agency *de novo*, the agency did not act without substantial justification in pressing its claim against petitioner.

Appeal by respondent from judgment entered 13 August 2008 by Judge Carl R. Fox in Wake County Superior Court. Heard in the Court of Appeals 20 May 2009.

*Attorney General Roy Cooper, by Assistant Attorney General John W. Congleton, for Respondent-Appellant.*

*Nexsen Pruet, PLLC, by Daniel W. Koenig and James W. Bryan, for Petitioner-Appellee.*

ERVIN, Judge.

Respondent Bryan E. Beatty, Secretary of Crime Control and Public Safety, on behalf of the North Carolina Department of Crime Control & Public Safety, Division of State Highway Patrol, appeals from a memorandum opinion and order entered 13 August 2008 granting a motion for summary judgment filed by Petitioner Daily Express, Inc.; denying Respondent's motion for summary judgment; ordering Respondent to "refund to Petitioner the full amount of the civil

penalty assessed . . . in the amount of $24,208.00 . . . plus interest[;]" and ordering Respondent to "pay . . . Petitioner its reasonable attorney's fees[.]" We affirm in part and vacate in part.

## I. Factual Background

On 24 August 2007, the North Carolina Department of Transportation issued Single Trip Permit #708240W0062 to Petitioner. The permit, which was valid from 29 August 2007 to 7 September 2007, authorized Petitioner to transport a large crane from Wilmington to Tennessee. Although the tractor trailer to be used to transport the crane had a registered weight of 80,000 pounds, the permit allowed it to move a gross weight of 187,000 pounds. The permit also authorized travel from sunrise to sunset on Monday through Thursday, required a rear escort vehicle, and mandated the use of a second escort vehicle if the gross weight of the tractor trailer and its cargo exceeded 149,999 pounds.

On 30 August 2007, Petitioner's driver, Robert Louis Belanger (Belanger), accompanied by two escort vehicles in accordance with the permit, transported the crane. At approximately 6:15 p.m. on that date, Belanger experienced mechanical difficulties with the tractor trailer and pulled to the side of Interstate 40 for the purpose of repairing a broken airline. The required repairs took forty-five minutes to complete.

In view of the fact that Belanger did not believe it would be either wise or safe to leave his tractor trailer parked on the side of Interstate 40 overnight, he sent the pilot escort vehicle to find a safe location at which to spend the night. The driver of the escort vehicle decided that Belanger should drive the tractor trailer to the Hillsborough weigh station for that purpose. Belanger arrived at the weigh station at 8:05 p.m.

Upon arrival, one of Respondent's officers informed Belanger that his permit was "null and void" because Belanger was traveling after sunset in violation of the permit's time of travel restrictions. As a result, the officer issued an assessment in the amount of $250.00 for operating in violation of the permit's time of travel restrictions pursuant to N.C. Gen. Stat. § 20-119(d)(2). In addition, the officer issued an overweight citation and assessment pursuant to N.C. Gen. Stat. § 20-119(d) and N.C. Gen. Stat. § 20-118(e) in the amount of $24,208.00, with the amount of this overweight penalty based on the difference between the actual weight of the vehicle and its load,

which was 173,000 pounds, and the registered weight of the tractor trailer, which was 80,000 pounds, without considering that the permit allowed the transportation of a gross weight of 187,000 pounds.

Since Petitioner could not pay the assessment that evening, the tractor trailer was impounded. After Petitioner paid the assessment on the following morning, Respondent returned the permit to Belanger and allowed him to continue his trip.

On 7 September 2007, Petitioner filed a letter with Respondent protesting the overweight penalty. On 12 October 2007, Respondent informed Petitioner that an administrative review revealed that the officer followed state law and agency policy in issuing the citation and assessing the overweight penalty. On 26 December 2007, Petitioner filed a petition protesting the $24,208.00 overweight penalty pursuant to N.C. Gen. Stat. § 20-91.1,[1] and sought to recover the amount of the assessment plus attorneys fees. On 19 May 2008 and 13 June 2008, respectively, Petitioner and Respondent filed summary judgment motions. On 13 August 2008, the trial court entered a memorandum opinion and order granting Petitioner's motion for summary judgment; denying Respondent's motion for summary judgment; ordering Respondent to "refund to Petitioner the full amount of the civil penalty assessed . . . in the amount of $24,208.00 . . . plus interest[;]" and ordering Respondent to "pay to Petitioner its reasonable attorney's fees[.]" From this order, Respondent noted an appeal to this Court.

## II.  Legal Analysis

### A.  Claim for Refund of Overweight Penalty

[1] First, Respondent contends that the trial court erred by granting Petitioner's motion for summary judgment and requiring Respondent to repay the overweight penalty plus interest. We disagree.

This Court reviews orders granting summary judgment using a *de novo* standard of review. *Builders Mut. Ins. Co. v. N. Main Constr., Ltd.*, 361 N.C. 85, 88, 637 S.E.2d 528, 530 (2006). According to well-established North Carolina law, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admis-

---

1. We note that N.C. Gen. Stat. § 20-91.1 was repealed by 2007 N.C. Sess. Laws ch. 491, sec. 2 effective 1 January 2008. Because Respondent does not argue that the repeal of N.C. Gen. Stat. § 20-91.1 affects the disposition of this case, we need not address the impact of the General Assembly's action on the rights and obligations of the parties before us. *See* N.C.R. App. P. 10(b)(1).

sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). Moreover, "all inferences of fact . . . must be drawn against the movant and in favor of the party opposing the motion." *Caldwell v. Deese*, 288 N.C. 375, 378, 218 S.E.2d 379, 381 (1975) (quotation omitted). The trial court may not resolve issues of fact in deciding a motion for summary judgment and must deny the motion if there is a genuine issue as to any material fact. *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972).

As we understand the record, there are no genuine issues of material fact in dispute between the parties. In *Daily Express, Inc. v. N.C. Dep't of Crime Control & Pub. Safety*, —— N.C. App. ——, ——, 671 S.E.2d 587, 591-92 (2009), we examined the relevant statutory provisions in detail and concluded that Respondent lacked the statutory authority to impose an overweight penalty incurred under circumstances essentially identical to those at issue here and calculated in the manner utilized in this instance. As a result, for the reasons stated in *Daily Express*, we affirm the trial court's decision to grant summary judgment in favor of Petitioner on the issue of whether Petitioner is entitled to a refund of the overweight penalty assessed against it with interest.

### B.  Attorney's Fees

**[2]** Secondly, Respondent contends that the trial court erred by awarding attorney's fees to Petitioner pursuant to N.C. Gen. Stat. § 6-19.1. We agree.

N.C. Gen. Stat. § 6-19.1 provides, in pertinent part, that:

In any civil action . . . brought by the State . . . unless the prevailing party is the State, the court may, in its discretion, allow the prevailing party to recover reasonable attorney's fees . . . to be taxed as court costs against the appropriate agency if:

(1)  The court finds that the agency acted without substantial justification in pressing its claim against the party; and

(2)  The court finds that there are no special circumstances that would make the award of attorney's fees unjust. The party shall petition for the attorney's fees within 30 days following final disposition of the case. The petition shall be supported by an affidavit setting forth the basis for the request.

DAILY EXPRESS, INC. v. BEATTY

[202 N.C. App. 441 (2010)]

N.C. Gen. Stat. § 6-19.1. In its decision awarding attorney's fees, the trial court stated that:

> The Court, in the exercise of its discretion, concludes that Petitioner, the prevailing party in this action, should recover its reasonable attorney's fees in this action. The Court retains jurisdiction of this matter for the entry of an award of attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1, subject to Petitioner's submission of a petition/affidavit setting forth Petitioner's reasonable attorney's fees. In this regard, Respondent acted without substantial justification in pressing its claim against Petitioner and refusing to withdraw Citation # 3118999-6 and refund the $24,208.00 payment to Petitioner, and there are no special circumstances that would make the award of attorney's fees unjust.

> Respondent shall pay to Petitioner its reasonable attorney's fees incurred in this action, subject to Petitioner's submission of a petition/affidavit setting forth Petitioner's reasonable attorney's fees which it seeks to recover in this action. The issue as to the amount of Petitioner's reasonable attorney's fees shall come on for hearing before the undersigned at a time to be arranged among counsel for the parties and the Trial Court Administrator, which hearing shall take place no earlier than five (5) days following the service of such petition/affidavit by Petitioner upon counsel for Respondent.

According to Respondent, the trial court erred in deciding to award attorney's fees to Petitioner because (1) the trial court lacked jurisdiction to enter the award due to Petitioner's failure to file the required Petition, and (2) Respondent was substantially justified in pressing its claim against Petitioner.

## 1. Jurisdiction

Respondent initially contends that the trial court lacked jurisdiction to award attorney's fees to Respondent, rendering the order awarding attorney's fees void. We disagree.

"The issue of jurisdiction over the subject matter of an action may be raised at any time during the proceedings, including on appeal." *McClure v. County of Jackson*, 185 N.C. App. 462, 469, 648 S.E.2d 546, 550 (2007). "[A] judgment entered without jurisdiction is a void judgment without legal effect and may be treated as a nullity." *Letterlough v. Atkins*, 258 N.C. 166, 168, 128 S.E.2d 215, 217 (1962) (citing *Hart v. Motors*, 244 N.C. 84, 92 S.E.2d 673 (1956)).

As we have already noted, N.C. Gen. Stat. § 6-19.1(2) requires a party seeking an award of attorney's fees to "petition for the attorney's fees within 30 days following final disposition of the case. . . ." "[T]he 30-day filing period contained in [N.C. Gen. Stat. § 6-19.1] is a jurisdictional prerequisite to the award of attorney's fees[.]" *Whiteco Indus., Inc. v. Harrelson*, 111 N.C. App. 815, 818, 434 S.E.2d 229, 232 (1993), *disc. review denied, appeal dismissed*, 335 N.C. 566, 441 S.E.2d 135 (1994). A "final disposition" for purposes of N.C. Gen. Stat. § 6-19.1 is " 'such a conclusive determination of the subject-matter that after the award, judgment, or decision is made, nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.' " *Whiteco*, 111 N.C. App. at 818, 434 S.E.2d at 232 (quoting *Black's Law Dictionary*, 630 (6th ed. 1990)). The filing period "begins to run after the decision has become final and it is too late to appeal." *Id.*, 111 N.C. App. at 818, 434 S.E.2d at 231; *see also Hodge v. N.C. Dept. of Transp.*, 161 N.C. App. 726, 729, 589 S.E.2d 737, 738 (2003), *cert. denied*, 358 N.C. 234, 595 S.E.2d 151 (2004) (holding that plaintiff's failure to petition for attorney's fees until "almost a year and a half after final disposition of his case" constituted a failure to satisfy the " 'jurisdictional prerequisite' . . . that he petition for attorney's fees within 30 days of his case's final disposition") (citing *Black's Law Dictionary*, 1145 (6th ed. 1990)). "[T]he 30-day period" does not, however, establish a "starting point as well as a deadline[.]" *Whiteco*, 111 N.C. App. at 818, 434 S.E.2d at 231 (holding that, because the petitioner's motion for attorney's fees was filed well before final judgment, it was timely, and the trial court had jurisdiction to hear the matter) (citing *McDonald v. Schweiker*, 726 F.2d 311 (7th Cir. 1983)).

In addition, the "plain language" of N.C. Gen. Stat. § 6-19.1 requires a "prevailing party seeking recovery of attorney's fees to 'petition' for them." *Hodge*, 161 N.C. App. at 729, 589 S.E.2d at 738. "[A] petition is '[a] formal written application to a court requesting judicial action on a certain matter.' " *Id.* This Court has held that a "request for attorney's fees contained within a complaint's prayer for relief does not constitute a 'petition' within the meaning of Section 6-19.1(2)." *Id.* In the administrative review context, however, the Supreme Court rejected a contention that the superior court lacked the authority to award attorney's fees during the course of an administrative review proceeding and stated that, when the petitioner "petitioned the superior court for review, this gave the superior court jurisdiction[;]" that the relevant substantive "statute provides for a *de novo* hearing;" that "this gave the court jurisdiction to determine the

whole case, including the taxing of costs;" that N.C. Gen. Stat. § 6-19.1 "provides for attorney's fees to be taxed as costs in some instances;" and that "[w]e do not believe that the General Assembly intended that N.C. [Gen. Stat.] § 6-19.1 would provide for a separate proceeding in which the court does not have jurisdiction until certain prerequisites are met." *Able Outdoor, Inc. v. Harrelson*, 341 N.C. 167, 170, 459 S.E.2d 626, 628 (1995). This Court has construed *Able* to mean that "a superior court has jurisdiction to award attorney's fees before final disposition of the case when reviewing the agency action *de novo*[.]" *McIntyre v. Forsyth County Dep't of Soc. Servs.*, 162 N.C. App. 94, 98, 589 S.E.2d 745, 748, *disc. review denied*, 358 N.C. 377, 598 S.E.2d 136 (2004) (citing *Able*, 241 N.C. at 170, 459 S.E.2d at 628); *see also Early v. Durham County Dept. of Soc. Servs.*, —— N.C. App. ——, ——, 667 S.E.2d 512, 524 (2008), *disc. review denied*, —— N.C. ——, ——, S.E.2d (2009) (stating that "a superior court has jurisdiction to interpret N.C. [Gen. Stat.] § 6-19.1 and 'award attorneys fees before final disposition of the case when reviewing the agency *de novo*' ") (quoting *McIntyre*, 162 N.C. App. at 98, 589 S.E.2d at 748)); *but see Hodge*, 161 N.C. App. at 729, 589 S.E.2d at 739 (rejecting the plaintiff's contention that he satisfied the 30-day filing period contained in N.C. Gen. Stat. § 6-19.1(2) by requesting attorney's fees in his complaint in July 1998 and by filing a separate petition almost a year and a half after final disposition of his case). As a result, a superior court judge reviewing administrative action on a *de novo* basis is entitled to award attorney's fees during the judicial review process even though "final disposition" has not occurred.

In this case, Respondent challenges the trial court's jurisdiction to award attorney's fees to Petitioner because, "after granting summary judgment in favor of [Petitioner], the trial court indicated *sua sponte* that it would award attorney's fees[.]" Although the record clearly reflects that Petitioner requested that the trial court "award attorneys' fees as allowed by law" in both its complaint and in its motion for summary judgment, these filings do not constitute the type of formal "petition" envisioned by N.C. Gen. Stat. § 6-19.1. *See Hodge*, 161 N.C. App. at 729, 589 S.E.2d at 739 (stating that "a petition is '[a] formal written application to a court requesting judicial action on a certain matter' " and that a "request for attorney's fees contained within a complaint's prayer for relief does not constitute a 'petition' within the meaning of [N.C. Gen. Stat. §] 6-19.1(2)"). However, before summarily ruling that jurisdiction did not attach, we must determine: (1) whether a "final disposition" necessitating the filing of a petition has occurred, and (2) whether the principle enunciated in *Able* autho-

rized the trial court to award attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1 despite the absence of a formal petition. After carefully reviewing the record in light of the applicable law, we conclude that the trial court did not exceed its jurisdiction by addressing the attorney's fees issue in this case.

First, we examine whether the time within which Petitioner is entitled to request attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1 has expired. As we have already noted, a "final disposition" for purposes of N.C. Gen. Stat. § 6-19.1 is " 'such a conclusive determination of the subject-matter that after the award, judgment, or decision is made, nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.' " *Whiteco*, 111 N.C. App. at 818, 434 S.E.2d at 232 (quoting Black's Law Dictionary 630 (6th ed. 1990)).[2] In this instance, there does not appear to have been "a conclusive determination" of Petitioner's rights given that this case has been presented to this Court for review and given that either party may seek further review by the Supreme Court. For that reason, we conclude that "final disposition" for purposes of N.C. Gen. Stat. § 6-19.1 has not yet occurred in this case and will not occur until the Supreme Court either declines to grant discretionary review of our decision or until any proceedings resulting from Supreme Court review of our order have concluded. As a result, since "final disposition" for purposes of N.C. Gen. Stat. § 6-19.1 has yet to occur for purposes of this litigation, the fact that Petitioner has not yet filed a formal petition of the type contemplated by N.C. Gen. Stat. § 6-19.1 stands as no obstacle to Petitioner's ability to seek attorney's fees from Respondent, particularly given the trial court's decision to require Petitioner to file such a petition after the conclusion of all appellate proceedings in this case. *See Early*, —— N.C. App. ——, 667 S.E.2d 512, 517 (2008) (stating that the petitioner "filed a [timely] motion . . . seeking attorney fees" on 11 January 2007, since that filing was made less than one month after the Supreme Court determined that it had improvidently granted discretionary review); *McIntyre*, 162 N.C. App. 94, 99, 589 S.E.2d 745, 748 (2004) (holding that, since "final disposition" for purposes of N.C. Gen. Stat. § 6-19.1 occurred on 20 December 2000, when the Supreme Court denied petitioner's peti-

---

2. Petitioner notes that the trial court's order requires it to "petition . . . for a determination of *the amount of attorney's fees* to be awarded within thirty days after the conclusion of this appeal (or any subsequent appeal)." In Petitioner's view, "[n]o other petition was required before the trial court's award of attorney's fees, because" *Able* and its progeny gave the trial court "jurisdiction to determine the whole case on summary judgment, including awarding attorney's fees as costs."

tion for writ of certiorari, and since the petitioner did not file petition seeking attorney's fees until 18 March 2002, the trial court lacked jurisdiction to award the requested attorney's fees); *Hodge,* 161 N.C. App. 726, 729, 589 S.E.2d 737, 739 (2003) (holding that, because "final disposition" occurred when the Supreme Court issued its opinion on 6 October 2000, the trial court lacked jurisdiction to award attorney's fees on 15 October 2002 since the plaintiff did not petition for such an award until 15 March 2002); *Whiteco,* 111 N.C. App. 815, 818, 434 S.E.2d 229, 232 (1993) (holding that the petitioner's motion for attorney's fees, which was filed on 10 June 1991, sufficed to confer jurisdiction on the trial court despite the fact that "final disposition" did not occur until 21 January 1992).

Next, we examine whether the trial court's review of the State Highway Patrol's administrative determination amounted to *de novo* review, such that jurisdiction attached to award attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1 under *Able* and its progeny. We conclude that it did, so that the trial court had jurisdiction to consider the attorney's fees issue under that line of authority despite the lack of a "final disposition" or a formal petition.

Petitioner initiated this proceeding pursuant to former N.C. Gen. Stat. § 20-91.1 (2007), which provided that:

> Whenever a person shall have a valid defense to the enforcement of the collection of tax assessed or charged against him or his property, such person shall pay such tax to the proper officer, and notify such officer in writing that he pays the same under protest. Such payments shall be without prejudice to any defense or rights he may have in the premises, and he may, at any time within 30 days after such payment, demand the same in writing from the Secretary of Crime Control and Public Safety; and if the same shall not be refunded within 90 days thereafter, may sue such official in the courts of the State for the amount so demanded. Such suit must be brought in the Superior Court of Wake County, or in the county in which the taxpayer resides.

N.C. Gen. Stat. § 20-91.1 (2007), *repealed by* 2007 N.C. Sess. Laws 491, effective 1 January 2008. Although N.C. Gen. Stat. § 20-91.1 does not explicitly provide for *de novo* review in the superior court, the literal language of that statutory provision authorizes an aggrieved person who believes that he or she has any defenses to an assessment made by the State Highway Patrol to "sue such official in the courts of the State for the amount so demanded" without providing any indication that the resulting litigation differs in any way from ordinary civil liti-

gation. Perhaps for that reason, proceedings brought before the superior court pursuant to N.C. Gen. Stat. § 20-91.1 have consistently been reviewed on a *de novo* basis without adverse comment from this Court. *See Daily Express*, —— N.C. App. ——, 671 S.E.2d 587, 591-92 (2009) (affirming the trial court's order reversing an administrative decision of the State Highway Patrol, in which the trial court made findings of fact); *see also C & H Transp. Co. v. N.C. Div. of Motor Vehicles*, 34 N.C. App. 616, 619, 239 S.E.2d 309, 311 (1977). Similarly, in this case, both parties filed motions for summary judgment before the trial court, implicitly recognizing that the trial court could potentially be required to resolve disputed factual issues in the event that any such issues actually existed. As a result, we conclude that actions brought pursuant to former N.C. Gen. Stat. § 20-91.1 were to be heard on a *de novo* basis, rendering the principles enunciated in *Able* applicable to this proceeding and authorizing the trial court to consider the issue of attorney's fees prior to the point at which "final disposition" had occurred.

Thus, given that there has not yet been a "final disposition" of this case, the thirty day period for filing a petition for attorney's fees specified in N.C. Gen. Stat. § 6-19.1 has not yet run, a fact which means that Petitioner remains free to file the required formal petition prior to an actual attorney's fee award. Furthermore, given that the assessment of an additional overweight penalty against Petitioner was subject to review on a *de novo* basis pursuant to former N.C. Gen. Stat. § 20-91.1, the trial court had jurisdiction under *Able* and its progeny to make a decision to award attorney's fees at the summary judgment stage of this administrative review proceeding despite the fact that Petitioner had not filed a formal "petition" seeking such relief, particularly since the amount of the award will be determined upon the "final disposition" of the case and since the trial court has ordered that a "petition" of the type specified in N.C. Gen. Stat. § 6-19.1 be filed prior to the entry of an actual attorney's fee award.[3] As a result, we reject Respondent's jurisdictional challenge to the trial court's decision to award attorney's fees to Petitioner pursuant to N.C. Gen. Stat. § 6-19.1.

### 2. Substantial Justification

Finally, Respondent contends that the trial court erred by awarding attorney's fees to Petitioner because Respondent was substan-

---

3. We would note, however, "that judicial economy favors the [determination of] attorney's fees only after the judgment has become final, thereby avoiding piecemeal litigation of the issue." *Whiteco*, 111 N.C. App. at 818, 434 S.E.2d at 232.

tially justified in assessing the challenged overweight penalty. After careful consideration of the applicable law as of the time that Respondent penalized Petitioner, we are constrained to agree.

As we have already noted, N.C. Gen. Stat. § 6-19.1 authorizes an award of attorney's fees against the State "in its discretion" in the event that "[t]he court finds that the agency acted without substantial justification in pressing its claim against the party." N.C. Gen. Stat. § 6-19.1. Generally speaking, decisions committed to the discretion of the trial judge will be reviewed on appeal only upon a showing that the trial judge abused his discretion. *Tay v. Flaherty*, 100 N.C. App. 51, 57, 394 S.E.2d 217, 220, *disc. rev. denied*, 327 N.C. 643, 399 S.E.2d 132 (1990). "An abuse of discretion occurs where the ruling of the trial court could not have been the result of a reasoned decision." *May v. City of Durham*, 136 N.C. App. 578, 582, 525 S.E.2d 223, 227 (2000). However, a trial court's determination that a state agency acted without "substantial justification" is a conclusion of law and is reviewable by this Court on appeal. *Table Rock Chapter of Trout Unlimited v. Envtl. Mgmt. Comm'n*, 191 N.C. App. 362, 364, 663 S.E.2d 333, 335 (2008) (quoting *Whiteco*, 111 N.C. App. at 819, 434 S.E.2d at 232-33).

In this case, Respondent contends that the trial court erred by concluding that Respondent lacked "substantial justification in pressing its claim." A claim has " 'substantial justification' " within the meaning of N.C. Gen. Stat. § 6-19.1 when it is " 'justified in substance or in the main'—that is, justified to a degree that could satisfy a reasonable person." *Crowell Constructors v. State ex rel. Cobey*, 342 N.C. 838, 844, 467 S.E.2d 675, 679 (1996) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 101 L. Ed. 2d 490, 504 (1988)). The General Assembly enacted N.C. Gen. Stat. § 6-19.1 in order "to curb unwarranted, ill-supported suits initiated by State agencies." *Crowell Constructors*, 342 N.C. at 844, 467 S.E.2d at 679. For that reason, the "substantial justification" standard "should not be so strictly interpreted as to require the agency to demonstrate the infallibility of each suit it initiates." *Id.* "Similarly, this standard should not be so loosely interpreted as to require the agency to demonstrate only that the suit is not frivolous, for 'that is assuredly not the standard for Government litigation of which a reasonable person would approve.' " *Id.* (quoting *Pierce*, 487 U.S. at 566, 101 L. Ed. 2d at 505). As a result, the Supreme Court has adopted "a middle-ground objective standard" under which "the agency [is required] to demonstrate that its position, at and from the time of its initial

action, was rational and legitimate to such degree that a reasonable person could find it satisfactory or justifiable in light of the circumstances then known to the agency." *Id.; see also Williams v. N.C. Dep't of Env't & Nat. Res.*, 166 N.C. App. 86, 91, 601 S.E.2d 231, 233 (2004), *disc. review denied*, 359 N.C. 643, 614 S.E.2d 925 (2005) (stating that "the burden is on the agency to 'demonstrate that its position, at and from the time of its initial action, was rational and legitimate to such [a] degree that a reasonable person could find it satisfactory or justifiable in light of the circumstances then known to the agency[,]' " such that "substantial justification" is shown); *S.E.T.A. UNC-CH v. Huffines*, 107 N.C. App. 440, 443-44, 420 S.E.2d 674, 676 (1992) (quoting *Tay*, 100 N.C. App. at 56, 394 S.E.2d at 219-20) (stating that the appropriate test for "substantial justification" under N.C. Gen. Stat. § 6-19.1 is whether the agency's action was " 'justified to a degree that could satisfy a reasonable person' under the existing law and facts known to, or reasonably believed by, respondent at the time respondent refused to make disclosure"). "[I]n deciding whether a State agency has pressed a claim against a party 'without substantial justification,' the law and facts known to, or reasonably believed by, the State agency at the time the claim is pressed must be evaluated." *Crowell Constructors*, 342 N.C. at 845, 467 S.E.2d at 680. In addition, we are required to consider the entire record in determining whether there was "substantial justification" for the agency's action. *Williams*, 166 N.C. App. at 89, 601 S.E.2d at 233.

A proper resolution of the present issue requires analysis of two statutory provisions. First, N.C. Gen. Stat. § 20-119(d) provides that:

> (d) For each violation of any of the terms or conditions of a special permit issued or where a permit is required but not obtained under this section the Department of Crime Control and Public Safety may assess a civil penalty for each violation against the registered owner of the vehicle as follows:
>
> (1) A fine of five hundred dollars ($500.00) for any of the following: operating without the issuance of a permit, moving a load off the route specified in the permit, falsifying information to obtain a permit, failing to comply with dimension restrictions of a permit, or failing to comply with the number of properly certified escort vehicles required.
>
> (2) A fine of two hundred fifty dollars ($250.00) for moving loads beyond the distance allowances of an annual per-

mit covering the movement of house trailers from the retailer's premises or for operating in violation of time of travel restrictions.

(3) A fine of one hundred dollars ($100.00) for any other violation of the permit conditions or requirements imposed by applicable regulations.

The Department of Transportation may refuse to issue additional permits or suspend existing permits if there are repeated violations of subdivision (1) or (2) of this subsection. In addition to the penalties provided by this subsection, a civil penalty in accordance with G.S. 20-118(e)(1) and (3) may be assessed if a vehicle is operating without the issuance of a required permit, operating off permitted route of travel, operating without the proper number of certified escorts as determined by the actual loaded weight of the vehicle combination, fails to comply with travel restrictions of the permit, or operating with improper license. Fees assessed for permit violations under this subsection shall not exceed a maximum of twenty-five thousand dollars ($25,000).

N.C. Gen. Stat. § 20-119(d). Second, N.C. Gen. Stat. §§ 20-118(e)(1) and (3) provide that:

(1) . . . [F]or each violation of the single-axle or tandem-axle weight limits set in subdivision (b)(1), (b)(2), or (b)(4) of this section or axle weights authorized by special permit according to G.S. 20-119(a), the Department of Crime Control and Public Safety shall assess a civil penalty against the owner or registrant of the vehicle in accordance with the following schedule: for the first 1,000 pounds or any part thereof, four cents (4 [cents]) per pound; for the next 1,000 pounds or any part thereof, six cents (6 [cents]) per pound; and for each additional pound, ten cents (10 [cents]) per pound. These penalties apply separately to each weight limit violated. In all cases of violation of the weight limitation, the penalty shall be computed and assessed on each pound of weight in excess of the maximum permitted. . . .

(3) If an axle-group weight of a vehicle exceeds the weight limit set in subdivision (b)(3) of this section plus any tolerance allowed in subsection (h) of this section or axle-group weights or gross weights authorized by special permit under G.S. 20-119(a), the Department of Crime Control and Public Safety shall assess a civil penalty against the owner or regis-

trant of the motor vehicle. The penalty shall be assessed on the number of pounds by which the axle-group weight exceeds the limit set in subdivision (b)(3), as follows: for the first 2,000 pounds or any part thereof, two cents (2 [cents]) per pound; for the next 3,000 pounds or any part thereof, four cents (4 [cents]) per pound; for each pound in excess of 5,000 pounds, ten cents (10 [cents]) per pound. Tolerance pounds in excess of the limit set in subdivision (b)(3) are subject to the penalty if the vehicle exceeds the tolerance allowed in subsection (h) of this section. These penalties apply separately to each axle-group weight limit violated.

N.C. Gen. Stat. §§ 20-118(e)(1) and (3). Since there is no question but that Petitioner violated the time of travel restrictions set out in its permit, it was clearly subject to a $250.00 fine pursuant to N.C. Gen. Stat. § 20-119(d)(2). The genuinely-contested issue before the trial court was whether N.C. Gen. Stat. § 20-119(d) and N.C. Gen. Stat. § 20-118(e) authorized Respondent to issue an additional overweight penalty based on the difference between the actual weight of the truck, which was 173,000 pounds, and the statutory maximum specified in Section 20-118(b), which is 80,000 pounds, despite the fact that the actual weight of the truck did not violate the 187,000 pound weight limit specified in the special permit.

The Court's reasoning in *Daily Express* essentially resolves the question of whether the State Highway Patrol was "substantially justified" in assessing such an additional overweight penalty against Petitioner. In *Daily Express*, the Court stated that "[i]t is not clear from the statutes, read *in pari materia*, if an additional weight based penalty is to be calculated where the truck is in violation of a condition of its special permit, but not as to the weight authorized by said permit." *Daily Express*, —— N.C. App. at ——, 671 S.E.2d at 590. "The ambiguity arises with section 20-119(d) in that it is not clear what it means to issue an additional penalty in accord with sections 20-118(e)(1) and (3)." *Id.* As it has in this case, Respondent argued in *Daily Express* "that where a truck is not in compliance with one or more of the conditions mandated by the special permit, the weight limit authorized by the permit does not apply and the driver is penalized for weight as if he did not have a permit at all." *Id.* The ultimate question faced by the Court in *Daily Express* was whether this argument was correct; the ultimate question before us in this case is whether Respondent was "substantially justified" in acting on the basis of this argument prior to our decision in *Daily Express*.

In evaluating the parties' arguments in *Daily Express*, this Court conceded that "[t]here is little evidence of legislative intent in this case." *Id.*, —— N.C. App. at ——, 671 S.E.2d at 591. Given that situation, the *Daily Express* Court reasoned that:

> Section 20-119(d) says that an additional penalty "may" be assessed for those operating without a special permit at all. There is ambiguity presented by the "may" and "shall" language. Under section 20-118, someone without a permit would certainly be fined based on the truck's weight that exceeds the statutory limit and unlike under section 20-119(d), the penalty imposed under sections 20-118(e)(1) and (e)(3) would not be subject to a $25,000.00 cap. Hence, if section 20-119 is supposed to be in accord with section 20-118, there seems to be no need for the cap contained in section 20-119 where the truck driver is operating without a special permit. Plaintiff does not address the effect of the cap. Defendant claims the cap supports its position in that the legislature realized a cap was needed because the additional civil penalty would be substantial where a truck is significantly overweight according to the statutory limit, but not overweight according to the special permit.

> Defendant asserts that since section 20-118 already mandates the assessment of a penalty when a truck is overweight, the legislature must have intended the additional civil penalty mentioned in section 20-119(d) to authorize the assessment of a different weight penalty when a truck is operating in violation of the specified restrictions listed in the special permit, but is not overweight according to the special permit. Otherwise, both sections would regulate the same issue, rendering section 20-119(d) redundant. This argument has merit, but it remains unclear whether the legislature intended to fine truck operators based on weight as if no special permit existed to carry that amount of weight.

*Id.* As a result, the quoted language from our opinion in *Daily Express* indicated that, even though we ultimately did not accept Respondent's construction of the applicable statutory provisions, we recognized that Respondent's construction of the relevant statutory language had some level of support in both logic and the language enacted by the General Assembly. Given that fact and the fact that Respondent acted against Petitioner prior to the issuance of our decision in *Daily Express*, *see S.E.T.A.*, 107 N.C. App. at 443-44, 420 S.E.2d at 676 (stating that "[t]he test for substantial justification is not

whether this court ultimately upheld respondent's [legal theory] as correct but, rather, whether respondent's [legal theory] was justified to a degree that could satisfy a reasonable person under the existing law and facts known to, or reasonably believed by, respondent at the time respondent [pressed its claim against the party]"), we conclude that Respondent's decision to proceed against Petitioner was "substantially justified" and that the trial court erred by reaching a contrary conclusion in awarding attorney's fees to Petitioner pursuant to N.C. Gen. Stat. § 6-19.1.

### III. Conclusion

As a result, for the reasons stated above, we conclude that the trial court correctly concluded that Respondent erroneously assessed a separate overweight penalty against Petitioner and that Respondent should refund the amount of this overweight penalty, plus appropriate interest, to Petitioner. However, since Respondent has shown that its action in assessing such an additional overweight penalty against Petitioner was, at the time that action was taken, not without substantial justification, we conclude that Respondent is not liable to Petitioner for attorney's fees pursuant to N.C. Gen. Stat. § 6-19.1. Thus, we affirm that portion of the trial court's order overturning Respondent's assessment of an additional overweight penalty against Petitioner and requiring that Respondent refund the amount of this overweight penalty with interest and vacate that portion of the trial court's order requiring Respondent to pay Petitioner's attorney's fees.

AFFIRMED in part, VACATED in part.

Judge McGEE concurs.

Judge JACKSON concurs in Sections I, II.A, and III and concurs in the result only in Section II.B of the opinion.